IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LISA MABARY,                                        )
                                                    )
                              Plaintiff,            )
                                                    )
vs.                                                 )          Civil Action No. 4:10-cv-3936
                                                    )
HOMETOWN BANK, N.A.,                                )
                                                    )
                              Defendant.            )
                                                    )

**NOTICE OF FILING OF SUPPLEMENTAL AUTHORITY
REGARDING PLAINTIFF'S MOTION TO CERTIFY CLASS
AND DEFENDANT'S MOTIONS TO DISMISS**

Defendant Hometown Bank, N.A. ("HTB") files this Notice of Filing of Supplemental Authority Regarding Plaintiff's Motion to Certify and Defendant's Motions to Dismiss.

1.      Plaintiff filed a Motion to Certify Class to which HTB has responded.

2.      HTB has previously filed Motions to Dismiss for lack of subject matter jurisdiction, standing and failure to state a claim.

3.      In further opposition to the Motion to Certify and in support of its renewed and re-urged Motions to Dismiss for lack of subject matter jurisdiction, standing and failure to state a claim, HTB submits the following supplemental authorities.

4.      Plaintiff in this case relies on 15 U.S.C. § 1693(d)(3)(B) requiring a user fee notice to be posted on the outside of the ATM machines as the basis of its claims for relief. There is no dispute in this case that all users of HTB's ATMs received an actual on screen notice of such fees and in fact could not complete the transaction without acknowledging such notice.

5.      In what is undoubtedly an unusual occurrence in today's Washington, D.C., on July 9, 2012, the House of Representatives <u>unanimously</u> passed H.R. 4367[1] repealing the

---

[1] See Exhibit 1 attached.

exterior notice requirement.[2]  On December 11, 2012 the Senate also <u>unanimously</u> passed H.R. 4367.[3]  The President signed H.R. 4367 on December 20, 2012.  With the passage of this statute the very basis of Plaintiff's claims for relief have now ceased to exist - before any class has been certified.

6.     In the Report of the House Committee on Financial Services the Committee stated:

> The EFTA and its implementing rule, Regulation E, require ATM operators to display notices in two separate places notifying consumers that they might be charged fees for withdrawing cash from the ATM.  The EFTA and Regulation E require that one of these notices must be posted in a prominent and conspicuous location on or at the ATM.  The second notice must appear on the screen of the ATM, or on a paper notice issued from the machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.
>
> When the provision requiring physical ATM fee disclosures was enacted in 1999, consumers were less familiar with ATM technology.  Some consumers may not have known that they might have to pay for using certain ATMs.  Because ATM screens were smaller and had lower resolutions in 1999, Congress required ATM operators to display fee notices to consumers both on the ATM screen and in a prominent location on the machine itself.  Today, ATMs are more prominent and better understood, screens are much larger, and they display sharper images.  Also, unlike before, when many ATMs were not capable of providing the notice on the monitor, every ATM can notify consumers of possible fees today.
>
> <u>But even though the EFTA's physical disclosure requirement has become obsolete, the requirement exposes banks, credit unions and retailers to frivolous lawsuits and unnecessary costs</u>.  Under the EFTA, a consumer who uses an ATM that does not have a fee notice physically attached may recover statutory damages of between $100 and $1,000 for each transaction.  The law also permits class action lawsuits to recover up to half a million dollars.  There is evidence that some plaintiffs are purposefully removing these superfluous notices from ATMs and then filing suits against ATM operators for failing to provide adequate notice on the machine.[4]

7.     The purpose of H.R. 4367 was described in the House Committee Report:

---

[2] See Exhibit 2 attached.
[3] See Exhibit 3 attached.
[4] See Exhibit 4 attached, at pp. 1-2.  (Emphasis added.)

H.R. 4367 amends Section 904 of the Consumer Credit Protection Act – commonly known as the "Electronic Fund Transfer Act" ("EFTA") – by eliminating the requirement that fee notices be affixed to or displayed on automated teller machines (ATMs).  <u>The requirement is unnecessary because ATM operators are required to disclose fees on ATM screens and consumers have the right to decline the transaction without being charged.  H.R. 4367 will protect ATM operators from frivolous lawsuits related to this fee notice requirement.</u>[5]

8.      In the House Floor Debate, Representative Luetkemeyer of Missouri described the need for this repeal:

Regulation E currently mandates that ATM fee disclosures appear both in physical placard or in sticker form on the machines as well as through an on-screen electronic notification.  Unfortunately, some individuals have seen the potential to make a quick buck off a frivolous claim and have begun to remove stickers from ATMs across the country, thereby placing financial institutions and merchants out of compliance.  This is exactly what has happened to some small financial institutions in my district and throughout Missouri.  Someone was traveling through the State, removing stickers from ATM machines, and then was offering to settle with the banks for several thousands of dollars per machine or the banks would face lawsuits.[6]

9.      Representative Scott of Georgia further described the need for this repeal:

Currently, as it works now, if an ATM machine does not display a physical placard, a financial institution – a bank, a credit union or our retailers – can be subject to a class action lawsuit, which would potentially amount to, as I said, one half a million dollars, or 1 percent of its net worth.  <u>This penalty has the potential of prompting bogus lawsuits against financial institutions simply due to a lack of the physical placard, even when the electronic notice is shown to a customer, perhaps because the placard was removed by a third party</u>.  So you can see that this is not fair for these institutions to be faced with up to a half million dollars in penalty fees, especially in these tough economic times.  At the same time, many of these institutions continue to struggle to maintain standard operations while being faced with our current economic climate.[7]

10.     In the Senate Floor Debate, Senator Udall of New Mexico stated:

I too am concerned by the rising consumer ATM costs.  As you know, the Senate recently passed legislation that does away with the requirement that ATMs post a physical sign notifying consumers that they may be charged multiple fees for a transaction.  In many ways this requirement was outdated and it put our local institutions at risk for frivolous lawsuits.[8]

---

[5] *Id.* at 1.  (Emphasis added.)
[6] See Exhibit 5 attached.
[7] *Id.* at 2. (Emphasis added.)
[8] See Exhibit 3 attached.

11.     As of the signing of H.R. 4367 by the President, there is no longer any legal basis for any claim for relief to be asserted by anyone.  Further, as the Supreme Court made clear in *Smith v. Bayer Corp.,* 564 U.S. ____, 131 S.Ct. 2368 (2011), class members are not "parties" to the litigation until the class is certified.  *Id.* at 2379-81.  Here, there is no claim to be certified since the claim has ceased to exist.  Under the requirements of Article III there was no constitutional case or controversy possible as of the signature of H.R. 4367 by the President.

12.     Further, since the purpose of a unanimous Congress in passing this bill was to eliminate this very kind of lawsuit, such legislation should be applied to this case under the principles of *Landgraf v. USI Film Prod.,* 511 U.S. 244 (1994).

Wherefore, HTB requests that class certification be denied and this suit be dismissed.

Respectfully submitted,

/s/ William Frank Carroll
William Frank Carroll

COX SMITH MATTHEWS INCORPORATED
William Frank Carroll
*Attorney-in-charge*
Southern ID:  2167
State Bar No. 03892500
Thomas B. Alleman
Southern ID:  10784
State Bar No. 01017485
Aubrey B. Colvard
Southern ID: 1268559
State Bar No. 24076324

1201 Elm, Suite 3300
Dallas, Texas 75270
(214) 698-7800
(214) 698-7899 (Fax)
Email: fcarroll@coxsmith.com
           talleman@coxsmith.com
           acolvard@coxsmith.com

ATTORNEYS FOR DEFENDANT
Hometown Bank, N.A.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 28, 2012 the foregoing Notice of Filing of Supplemental Authority Regarding Plaintiff's Motion to Certify Class and Defendant's Motions to Dismiss was electronically submitted to the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case file system of the court.   The electronic case file system sent a "Notice of Electronic Filing" to all counsel of record:

Emil Lippe, Jr.
LIPPE & ASSOCIATES
600 N. Pearl Street, Suite S2460
South Tower
Plaza of the Americas
Dallas, Texas  75201

Ronald Bruce Carlson
CARLSON LYNCH LTD.
231 Melville Ln.
P.O. Box 367
Sewickley, PA  15143

M. Andrew Zee
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530


/s/ William Frank Carroll
Attorney for Defendant

# EXHIBIT 1



H. R. 4367

# One Hundred Twelfth Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Tuesday,*
*the third day of January, two thousand and twelve*

## An Act

To amend the Electronic Fund Transfer Act to limit the fee disclosure requirement
for an automatic teller machine to the screen of that machine.

*Be it enacted by the Senate and House of Representatives of*
*the United States of America in Congress assembled,*

SECTION 1. FEE DISCLOSURE REQUIREMENT.

Section 904(d)(3)(B) of the Consumer Credit Protection Act
(15 U.S.C. 1693b(d)(3)(B)) (commonly known as the "Electronic Fund
Transfer Act") is amended—

(1) by striking "REQUIREMENTS." and all that follows
through "The notice required under clauses (i) and (ii)" and
inserting "REQUIREMENT.—The notice required under clauses
(i) and (ii)" after "NOTICE"; and

(2) by striking ", except that during the period beginning"
and all that follows and inserting a period.

*Speaker of the House of Representatives.*

*Vice President of the United States and*
*President of the Senate.*

# EXHIBIT 2

The yeas and nays were ordered.

The SPEAKER pro tempore. Pursuant to clause 8 of rule XX, further proceedings on this question will be postponed.

## RECESS

The SPEAKER pro tempore. Pursuant to clause 12(a) of rule I, the Chair declares the House in recess until approximately 6:30 p.m. today.

Accordingly (at 5 p.m.), the House stood in recess.

□ 1830

## AFTER RECESS

The recess having expired, the House was called to order by the Speaker pro tempore (Mr. DANIEL E. LUNGREN of California) at 6 o'clock and 30 minutes p.m.

## ANNOUNCEMENT BY THE SPEAKER PRO TEMPORE

The SPEAKER pro tempore. Pursuant to clause 8 of rule XX, proceedings will resume on motions to suspend the rules previously postponed.

Votes will be taken in the following order: H.R. 4155; H.R. 4367; and H.R. 5892, in each case by the yeas and nays.

The first electronic vote will be conducted as a 15-minute vote. Remaining electronic votes will be conducted as 5-minute votes.

## VETERAN SKILLS TO JOBS ACT

The SPEAKER pro tempore. The unfinished business is the vote on the motion to suspend the rules and pass the bill (H.R. 4155) to direct the head of each Federal department and agency to treat relevant military training as sufficient to satisfy training or certification requirements for Federal licenses, as amended, on which the yeas and nays were ordered.

The Clerk read the title of the bill.

The SPEAKER pro tempore. The question is on the motion offered by the gentleman from Utah (Mr. CHAFFETZ) that the House suspend the rules and pass the bill, as amended.

The vote was taken by electronic device, and there were—yeas 369, nays 0, not voting 62, as follows:

[Roll No. 452]

YEAS—369

| | | |
|---|---|---|
| Ackerman | Bass (CA) | Boren |
| Adams | Bass (NH) | Boswell |
| Aderholt | Becerra | Boustany |
| Alexander | Berg | Brady (PA) |
| Altmire | Berkley | Brady (TX) |
| Amash | Berman | Braley (IA) |
| Amodei | Biggert | Broun (GA) |
| Andrews | Bilbray | Brown (FL) |
| Baca | Bilirakis | Buchanan |
| Bachmann | Bishop (GA) | Bucshon |
| Bachus | Bishop (NY) | Buerkle |
| Baldwin | Bishop (UT) | Burgess |
| Barber | Black | Burton (IN) |
| Barletta | Blackburn | Calvert |
| Barrow | Blumenauer | Camp |
| Bartlett | Bonamici | Canseco |
| Barton (TX) | Bono Mack | Cantor |
| Capito | Herger | Olver |
| Capps | Herrera Beutler | Owens |
| Capuano | Higgins | Palazzo |
| Carnahan | Himes | Pallone |
| Carney | Hinchey | Pastor (AZ) |
| Carson (IN) | Hinojosa | Paulsen |
| Castor (FL) | Hochul | Pearce |
| Chabot | Holden | Pelosi |
| Chaffetz | Holt | Perlmutter |
| Chu | Honda | Peterson |
| Cicilline | Hoyer | Petri |
| Clarke (MI) | Huelskamp | Pingree (ME) |
| Clay | Huizenga (MI) | Pitts |
| Clyburn | Hultgren | Platts |
| Coffman (CO) | Hunter | Poe (TX) |
| Cohen | Hurt | Polis |
| Cole | Israel | Pompeo |
| Conaway | Issa | Posey |
| Connolly (VA) | Jenkins | Price (GA) |
| Cooper | Johnson (GA) | Price (NC) |
| Costa | Johnson (OH) | Quayle |
| Costello | Johnson, E. B. | Quigley |
| Courtney | Johnson, Sam | Rahall |
| Cravaack | Jones | Rangel |
| Crawford | Jordan | Reed |
| Crenshaw | Kaptur | Rehberg |
| Critz | Keating | Reichert |
| Crowley | Kelly | Renacci |
| Cuellar | Kildee | Reyes |
| Cummings | Kind | Ribble |
| Davis (CA) | King (IA) | Richardson |
| Davis (IL) | King (NY) | Richmond |
| Davis (KY) | Kingston | Rigell |
| DeFazio | Kinzinger (IL) | Rivera |
| DeGette | Kissell | Roby |
| DeLauro | Kline | Roe (TN) |
| Denham | Kucinich | Rogers (AL) |
| Dent | Labrador | Rogers (KY) |
| Dicks | Lamborn | Rogers (MI) |
| Dingell | Lance | Rokita |
| Doggett | Langevin | Rooney |
| Dold | Lankford | Ros-Lehtinen |
| Donnelly (IN) | Larsen (WA) | Roskam |
| Doyle | Larson (CT) | Ross (AR) |
| Dreier | Latham | Ross (FL) |
| Duffy | LaTourette | Rothman (NJ) |
| Duncan (SC) | Latta | Roybal-Allard |
| Duncan (TN) | Levin | Royce |
| Edwards | Lewis (GA) | Runyan |
| Ellmers | LoBiondo | Ryan (OH) |
| Emerson | Loebsack | Sánchez, Linda T. |
| Engel | Lofgren, Zoe | Sanchez, Loretta |
| Eshoo | Long | Sarbanes |
| Farr | Lowey | Scalise |
| Fattah | Lucas | Schakowsky |
| Fincher | Luetkemeyer | Schiff |
| Fitzpatrick | Luján | Schilling |
| Fleming | Lummis | Schrader |
| Flores | Lungren, Daniel E. | Schwartz |
| Forbes | Mack | Schweikert |
| Fortenberry | Maloney | Scott (SC) |
| Foxx | Marchant | Scott, Austin |
| Franks (AZ) | Marino | Scott, David |
| Frelinghuysen | Markey | Sensenbrenner |
| Fudge | Matheson | Serrano |
| Gallegly | Matsui | Sessions |
| Garamendi | McCarthy (CA) | Sewell |
| Gardner | McCarthy (NY) | Sherman |
| Garrett | McCaul | Shimkus |
| Gerlach | McClintock | Shuster |
| Gibbs | McCollum | Sires |
| Gibson | McDermott | Slaughter |
| Gohmert | McGovern | Smith (NE) |
| Gonzalez | McHenry | Smith (NJ) |
| Goodlatte | McIntyre | Smith (TX) |
| Gowdy | McKeon | Smith (WA) |
| Granger | McKinley | Southerland |
| Graves (GA) | McMorris | Speier |
| Graves (MO) | Rodgers | Stark |
| Green, Gene | McNerney | Stearns |
| Griffin (AR) | Meehan | Stivers |
| Griffith (VA) | Mica | Sullivan |
| Grijalva | Michaud | Sutton |
| Grimm | Miller (FL) | Terry |
| Guinta | Miller (MI) | Thompson (CA) |
| Guthrie | Miller (NC) | Thompson (MS) |
| Hahn | Miller, Gary | Thompson (PA) |
| Hall | Moore | Thornberry |
| Hanabusa | Moran | Tiberi |
| Hanna | Mulvaney | Tierney |
| Harper | Murphy (PA) | Tipton |
| Harris | Nadler | Tonko |
| Hartzler | Napolitano | Tooms |
| Hastings (FL) | Neugebauer | Tsongas |
| Hastings (WA) | Noem | Turner (NY) |
| Hayworth | Nugent | Turner (OH) |
| Heck | Nunes | Upton |
| Heinrich | Nunnelee | Van Hollen |
| Hensarling | | |
| Velázquez | Watt | Womack |
| Visclosky | Waxman | Woodall |
| Walberg | Webster | Woolsey |
| Walden | Welch | Yarmuth |
| Walsh (IL) | West | Yoder |
| Walz (MN) | Westmoreland | Young (FL) |
| Wasserman Schultz | Wilson (FL) | Young (IN) |
| Waters | Wittman | |
| | Wolf | |

NOT VOTING—62

| | | |
|---|---|---|
| Akin | Filner | Murphy (CT) |
| Austria | Flake | Myrick |
| Benishek | Fleischmann | Neal |
| Bonner | Frank (MA) | Olson |
| Brooks | Gingrey (GA) | Pascrell |
| Butterfield | Gosar | Paul |
| Campbell | Green, Al | Pence |
| Cardoza | Gutierrez | Peters |
| Carter | Hirono | Rohrabacher |
| Cassidy | Jackson (IL) | Ruppersberger |
| Chandler | Jackson Lee (TX) | Rush |
| Clarke (NY) | | Ryan (WI) |
| Cleaver | Johnson (IL) | Schmidt |
| Coble | Landry | Schock |
| Conyers | Lee (CA) | Scott (VA) |
| Culberson | Lewis (CA) | Shuler |
| DesJarlais | Lipinski | Simpson |
| Deutch | Lynch | Stutzman |
| Diaz-Balart | Manzullo | Whitfield |
| Ellison | Meeks | Wilson (SC) |
| Farenthold | Miller, George | Young (AK) |

□ 1855

Mr. McDERMOTT, Ms. WOOLSEY, and Mr. ALTMIRE changed their vote from "nay" to "yea."

So (two-thirds being in the affirmative) the rules were suspended and the bill, as amended, was passed.

The result of the vote was announced as above recorded.

A motion to reconsider was laid on the table.

Stated for:

Mr. LYNCH. Mr. Speaker, on rollcall vote 452, the vote for H.R. 4155, the Veteran Skills to Job Act, had I been able to vote, I would have voted "aye."

Mr. FILNER. Mr. Speaker, on rollcall 452, I was away from the Capitol due to prior commitments to my constituents. Had I been present, I would have voted "aye."

Mr. CASSIDY. Mr. Speaker, on rollcall No. 452 I was unavoidably detained. Had I been present, I would have voted "aye."

## ELECTRONIC FUND TRANSFER ACT AMENDMENT

The SPEAKER pro tempore. The unfinished business is the vote on the motion to suspend the rules and pass the bill (H.R. 4367) to amend the Electronic Fund Transfer Act to limit the fee disclosure requirement for an automatic teller machine to the screen of that machine, on which the yeas and nays were ordered.

The Clerk read the title of the bill.

The SPEAKER pro tempore. The question is on the motion offered by the gentleman from Missouri (Mr. LUETKEMEYER) that the House suspend the rules and pass the bill.

This is a 5-minute vote.

The vote was taken by electronic device, and there were—yeas 371, nays 0, not voting 60, as follows:

[Roll No. 453]

YEAS—371

| | | |
|---|---|---|
| Ackerman | Alexander | Amodei |
| Adams | Altmire | Andrews |
| Aderholt | Amash | Baca |

Bachmann
Bachus
Baldwin
Barber
Barletta
Barrow
Bartlett
Barton (TX)
Bass (CA)
Bass (NH)
Becerra
Berg
Berkley
Berman
Biggert
Bilbray
Bilirakis
Bishop (NY)
Bishop (UT)
Black
Blackburn
Blumenauer
Bonamici
Bono Mack
Boren
Boswell
Boustany
Brady (PA)
Brady (TX)
Braley (IA)
Broun (GA)
Brown (FL)
Buchanan
Bucshon
Buerkle
Burgess
Burton (IN)
Calvert
Camp
Canseco
Cantor
Capito
Capps
Capuano
Carnahan
Carney
Carson (IN)
Cassidy
Castor (FL)
Chabot
Chaffetz
Chu
Cicilline
Clarke (MI)
Clay
Clyburn
Coffman (CO)
Cohen
Cole
Conaway
Connolly (VA)
Cooper
Costa
Costello
Courtney
Cravaack
Crawford
Crenshaw
Critz
Crowley
Cuellar
Cummings
Davis (CA)
Davis (IL)
Davis (KY)
DeFazio
DeGette
DeLauro
Denham
Dent
Diaz-Balart
Dicks
Dingell
Doggett
Dold
Donnelly (IN)
Doyle
Dreier
Duffy
Duncan (SC)
Duncan (TN)
Ellmers
Emerson
Engel
Eshoo
Farr
Fattah
Fincher
Fitzpatrick

Fleming
Flores
Forbes
Fortenberry
Foxx
Franks (AZ)
Frelinghuysen
Fudge
Gallegly
Garamendi
Gardner
Garrett
Gerlach
Gibbs
Gibson
Gingrey (GA)
Gohmert
Gonzalez
Goodlatte
Gowdy
Granger
Graves (GA)
Graves (MO)
Green, Gene
Griffin (AR)
Griffith (VA)
Grijalva
Grimm
Guinta
Guthrie
Hahn
Hall
Hanabusa
Hanna
Harper
Harris
Hartzler
Hastings (FL)
Hastings (WA)
Hayworth
Heck
Heinrich
Hensarling
Herger
Herrera Beutler
Higgins
Himes
Hinchey
Hinojosa
Hochul
Holden
Holt
Honda
Hoyer
Huelskamp
Huizenga (MI)
Hultgren
Hunter
Hurt
Israel
Issa
Jenkins
Johnson (GA)
Johnson (OH)
Johnson, E. B.
Johnson, Sam
Jones
Jordan
Kaptur
Keating
Kelly
Kildee
Kind
King (IA)
King (NY)
Kingston
Kinzinger (IL)
Kissell
Kline
Kucinich
Labrador
Lamborn
Lance
Langevin
Lankford
Larsen (WA)
Larson (CT)
Latham
LaTourette
Latta
Levin
Lewis (GA)
LoBiondo
Loebsack
Lofgren, Zoe
Long
Lowey
Lucas
Luetkemeyer

Luján
Lummis
Lungren, Daniel E.
Mack
Maloney
Marchant
Marino
Markey
Matheson
Matsui
McCarthy (CA)
McCarthy (NY)
McCaul
McClintock
McCollum
McDermott
McGovern
McHenry
McIntyre
McKeon
McMorris Rodgers
McNerney
Meehan
Mica
Michaud
Miller (FL)
Miller (MI)
Miller (NC)
Miller, Gary
Moore
Moran
Mulvaney
Murphy (PA)
Nadler
Napolitano
Neugebauer
Noem
Nugent
Nunes
Nunnelee
Olver
Owens
Palazzo
Pallone
Pastor (AZ)
Paulsen
Pearce
Pelosi
Perlmutter
Peterson
Petri
Pingree (ME)
Pitts
Platts
Poe (TX)
Polis
Pompeo
Posey
Price (GA)
Price (NC)
Quayle
Quigley
Rahall
Rangel
Reed
Rehberg
Reichert
Renacci
Reyes
Ribble
Richardson
Richmond
Rigell
Rivera
Roby
Roe (TN)
Rogers (AL)
Rogers (KY)
Rogers (MI)
Rokita
Rooney
Ros-Lehtinen
Roskam
Ross (AR)
Ross (FL)
Rothman (NJ)
Roybal-Allard
Royce
Runyan
Ryan (OH)
Ryan (WI)
Sánchez, Loretta
Sarbanes
Scalise
Schakowsky
Schiff

Schilling
Schrader
Schwartz
Schweikert
Scott (SC)
Scott, Austin
Scott, David
Sensenbrenner
Serrano
Sessions
Sewell
Sherman
Shimkus
Shuster
Sires
Slaughter
Smith (NE)
Smith (NJ)
Smith (TX)
Smith (WA)
Southerland
Speier
Stark

Stearns
Stivers
Sullivan
Sutton
Terry
Thompson (CA)
Thompson (MS)
Thompson (PA)
Thornberry
Tiberi
Tierney
Tipton
Tonko
Towns
Tsongas
Turner (NY)
Turner (OH)
Upton
Van Hollen
Velázquez
Visclosky
Walberg
Walden

Walsh (IL)
Walz (MN)
Wasserman Schultz
Waters
Watt
Waxman
Webster
Welch
West
Westmoreland
Wilson (FL)
Wilson (SC)
Wittman
Wolf
Womack
Woodall
Woolsey
Yarmuth
Yoder
Young (FL)
Young (IN)

NOT VOTING—60

Akin
Austria
Benishek
Bishop (GA)
Bonner
Brooks
Butterfield
Campbell
Cardoza
Carter
Chandler
Clarke (NY)
Cleaver
Coble
Conyers
Culberson
DesJarlais
Deutch
Edwards
Ellison
Farenthold

Filner
Flake
Fleischmann
Frank (MA)
Gosar
Green, Al
Gutierrez
Hirono
Jackson (IL)
Jackson Lee (TX)
Johnson (IL)
Landry
Lee (CA)
Lewis (CA)
Lipinski
Lynch
Manzullo
Meeks
Miller, George
Murphy (CT)

Myrick
Neal
Olson
Pascrell
Paul
Pence
Peters
Rohrabacher
Ruppersberger
Rush
Sánchez, Linda T.
Schmidt
Schock
Scott (VA)
Shuler
Simpson
Stutzman
Whitfield
Young (AK)

□ 1902

So (two-thirds being in the affirmative) the rules were suspended and the bill was passed.

The result of the vote was announced as above recorded.

A motion to reconsider was laid on the table.

Stated for:

Mr. FILNER. Mr. Speaker, on rollcall 453, I was away from the Capitol due to prior commitments to my constituents. Had I been present, I would have voted "aye."

## HYDROPOWER REGULATORY EFFICIENCY ACT OF 2012

The SPEAKER pro tempore. The unfinished business is the vote on the motion to suspend the rules and pass the bill (H.R. 5892) to improve hydropower, and for other purposes, on which the yeas and nays were ordered.

The Clerk read the title of the bill.

The SPEAKER pro tempore. The question is on the motion offered by the gentlewoman from Washington (Mrs. McMORRIS RODGERS) that the House suspend the rules and pass the bill.

This is a 5-minute vote.

The vote was taken by electronic device, and there were—yeas 372, nays 0, not voting 59, as follows:

[Roll No. 454]

YEAS—372

Ackerman
Adams
Aderholt
Alexander
Altmire

Amash
Amodei
Andrews
Baca
Bachmann

Bachus
Baldwin
Barber
Barletta
Barrow

Bartlett
Barton (TX)
Bass (CA)
Bass (NH)
Becerra
Berg
Berkley
Berman
Biggert
Bilbray
Bilirakis
Bishop (GA)
Bishop (NY)
Bishop (UT)
Black
Blackburn
Blumenauer
Bonamici
Bono Mack
Boren
Boswell
Boustany
Brady (PA)
Brady (TX)
Braley (IA)
Broun (FL)
Brown (FL)
Buchanan
Bucshon
Buerkle
Burgess
Burton (IN)
Calvert
Camp
Canseco
Cantor
Capito
Capps
Capuano
Carnahan
Carney
Carson (IN)
Cassidy
Castor (FL)
Chabot
Chaffetz
Chu
Cicilline
Clarke (MI)
Clarke (NY)
Clay
Clyburn
Coffman (CO)
Cohen
Cole
Conaway
Connolly (VA)
Cooper
Costa
Costello
Courtney
Crawford
Crenshaw
Critz
Crowley
Cuellar
Cummings
Davis (CA)
Davis (IL)
Davis (KY)
DeFazio
DeGette
DeLauro
Denham
Dent
Diaz-Balart
Dicks
Dingell
Doggett
Dold
Donnelly (IN)
Doyle
Dreier
Duffy
Duncan (SC)
Edwards
Ellmers
Engel
Farr
Fattah
Fitzpatrick
Fleming
Flores
Forbes
Fortenberry

Foxx
Franks (AZ)
Frelinghuysen
Fudge
Gallegly
Garamendi
Gardner
Garrett
Gerlach
Gibson
Gingrey (GA)
Gohmert
Gonzalez
Goodlatte
Gowdy
Granger
Graves (GA)
Graves (MO)
Green, Gene
Griffin (AR)
Griffith (VA)
Grijalva
Grimm
Guinta
Guthrie
Hahn
Hall
Hanabusa
Harper
Harris
Hartzler
Hastings (FL)
Hastings (WA)
Hayworth
Heck
Heinrich
Hensarling
Herger
Himes
Hinojosa
Hochul
Holden
Holt
Honda
Hoyer
Huelskamp
Huizenga (MI)
Hultgren
Hurt
Israel
Issa
Jenkins
Johnson (GA)
Johnson (OH)
Johnson, Sam
Johnson, Sam
Jordan
Kaptur
Keating
Kelly
Kildee
Kind
King (IA)
King (NY)
Kingston
Kinzinger (IL)
Kissell
Kline
Kucinich
Labrador
Lamborn
Lance
Langevin
Lankford
Larsen (WA)
Larson (CT)
Latham
LaTourette
Latta
Levin
Lewis (GA)
LoBiondo
Loebsack
Lofgren, Zoe
Long
Lowey
Lucas
Luetkemeyer
Luján
Lummis
Lungren, Daniel E.
Mack

Maloney
Marchant
Marino
Markey
Matheson
Matsui
McCarthy (CA)
McCarthy (NY)
McClintock
McCollum
McDermott
McGovern
McHenry
McIntyre
McKeon
McKinley
McMorris Rodgers
McNerney
Meehan
Mica
Michaud
Miller (FL)
Miller (MI)
Miller (NC)
Miller, Gary
Moore
Moran
Mulvaney
Murphy (PA)
Nadler
Napolitano
Neugebauer
Noem
Nugent
Nunes
Nunnelee
Olver
Owens
Palazzo
Pallone
Pastor (AZ)
Paulsen
Pearce
Pelosi
Perlmutter
Peterson
Petri
Pingree (ME)
Pitts
Platts
Poe (TX)
Polis
Pompeo
Posey
Price (GA)
Price (NC)
Quayle
Quigley
Rahall
Rangel
Reed
Rehberg
Reichert
Renacci
Reyes
Ribble
Richardson
Richmond
Rigell
Rivera
Roby
Roe (TN)
Rogers (AL)
Rogers (KY)
Rogers (MI)
Rokita
Rooney
Ros-Lehtinen
Roskam
Ross (AR)
Ross (FL)
Rothman (NJ)
Roybal-Allard
Royce
Runyan
Ryan (OH)
Ryan (WI)
Sánchez, Linda T.
Sánchez, Loretta
Sarbanes
Scalise
Schakowsky
Schiff
Schilling
Schrader
Schwartz
Schweikert

# EXHIBIT 3

COMMITTEE ON FINANCE

Mr. LEVIN. Mr. President, I ask unanimous consent that the Committee on Finance be authorized to meet during the session of the Senate on December 11, 2012, at 10 a.m., in room SD–215 of the Dirksen Senate Office Building.

The PRESIDING OFFICER. Without objection, it is so ordered.

SELECT COMMITTEE ON INTELLIGENCE

Mr. LEVIN. Mr. President, I ask unanimous consent that the Select Committee on Intelligence be authorized to meet during the session of the Senate on December 11, 2012, at 2:30 p.m.

The PRESIDING OFFICER. Without objection, it is so ordered.

AMENDING THE FEDERAL DEPOSIT INSURANCE ACT

AMENDING THE ELECTRONIC FUND TRANSFER ACT

Mr. REID. Mr. President, I ask unanimous consent that the Senate proceed to the consideration of the following bills en bloc: Calendar No. 344, H.R. 4014; and H.R. 4367, which was received from the House and is at the desk.

There being no objection, the Senate proceeded to consider the bills en bloc.

ATM FEE DISCLOSURE

Mr. HARKIN. Mr. President, in the last few years, a number of colleagues and I have grown increasingly worried about the fees that consumers face when using an automated teller machine, ATM. According to Bankrate.com 2010 Checking Survey, the average surcharge a consumer pays to use an ATM has increased to $2.33. Over 99 percent of ATM operators charge this fee. Some ATM operators also charge balance inquiry fees.

In addition, consumers are also increasingly likely to face a fee from their own financial institution for using an ATM not owned by their institution. According to the same Bankrate study, 75 percent of checking accounts charge this fee, which is now up to $1.41 on average. Therefore, frequently, consumers may face fees of almost $4.00 for accessing their own cash.

Consumers who use prepaid cards are especially likely to pay a variety of fees for using an ATM. They can face ATM withdrawal fees, balance inquiry fees, and denied transaction fees. They may get no notice at the ATM of fees charged by the prepaid card.

Mr. UDALL of New Mexico. I thank the Senator.

I too am concerned by the rising consumer ATM costs. As you know, the Senate recently passed legislation that does away with the requirement that ATMs post a physical sign notifying consumers that they may be charged multiple fees for a transaction. In many ways this requirement was outdated and it put our local institutions at risk for frivolous lawsuits. While I supported the bill we passed, I believe we must proceed with caution.

All of my friends speaking on this issue today, myself included, believe that this legislation was only intended to remove duplicative disclosures and not to lessen the important information consumers rely on when making an ATM transactions. We are concerned that one of the unintended consequences of this legislation is that consumers will lose access to information about the fees that they might face at an ATM, including, for example, fees for simple transactions like a balance inquiry and additional fees imposed by their own institution.

I would like to ask Senator JOHNSON, the distinguished chairman of the Banking Committee, for his input on this point as well.

Mr. JOHNSON of South Dakota. I thank Senators UDALL and HARKIN.

The Senator has raised an important point about this legislation. The intent of this legislation is not to lessen the amount of information that a consumer receives prior to conducting a transaction at an ATM. As the Senator has laid out, it is important that consumers be fully informed of the types of fees that they may face at the time of the transaction. The point was to modernize the information that consumers get, taking into account technological changes. But this bill is only one step toward modernization. The CFPB may wish to look at other steps to ensure that consumers are fully informed about the fees they may incur, whether that be through improved onscreen ATM disclosures, better disclosures at point of sale, or other methods.

I understand that the Consumer Financial Protection Bureau is already taking a look at this issue as part of an existing rulemaking to streamline inherited regulations, and I agree that it is important for them to keep this fact in mind as they move forward on this rulemaking.

Mr. MERKLEY: I thank Chairman JOHNSON.

Yes, I would like to reiterate that the intent of this bill is to streamline duplicative disclosures and not make consumers less aware of potential fees that they face. Like you, I encourage the Bureau to use their upcoming rulemaking to ensure that this is not the case. I now turn to my friend from Minnesota.

Mr. FRANKEN. I thank Senator MERKLEY.

I would like to echo the concerns of my friends and colleagues, Senators HARKIN, UDALL, MERKLEY, and Chairman JOHNSON. This legislation is intended to provide relief from a physical signage requirement that is subject to abuse, not reduce the disclosure available to consumers using ATM machines. I encourage the CFPB to issue regulations that clarify that consumers should have, at a minimum, the same access to timely information as they had prior to the passage of this legislation. Consumers are in the best position to make the financial decisions that are best for them, but to do so, they must have the relevant information at the appropriate time. I am pleased that so many of my colleagues have come together to support this legislative effort—one that remedies a problem affecting so many of our community banks and credit unions, but that retains protections for American consumers.

Mr. REID. Mr. President, I ask unanimous consent that the bills be read three times and passed en bloc, the motions to reconsider be laid upon the table en bloc, with no intervening action or debate, and any related statements to these matters be printed in the RECORD.

The PRESIDING OFFICER. Without objection, it is so ordered.

The bills (H.R. 4014 and H.R. 4367) were ordered to a third reading, were read the third time, and passed.

BRIDGEPORT INDIAN COLONY LAND TRUST, HEALTH, AND ECONOMIC DEVELOPMENT ACT OF 2012

Mr. REID. Mr. President, I ask unanimous consent that the Senate proceed to the consideration of Calendar No. 534, H.R. 2467.

The PRESIDING OFFICER. The clerk will report the bill by title.

The assistant legislative clerk read as follows:

A bill (H.R. 2467) to take certain Federal lands in Mono County, California, into trust for the benefit of the Bridgeport Indian Colony.

There being no objection, the Senate proceeded to consider the bill.

Mr. REID. Mr. President, I ask unanimous consent that the bill be read a third time and passed, the motion to reconsider be considered made and laid upon the table, there be no intervening action or debate, and any statements relating to this measure be printed in the RECORD.

The PRESIDING OFFICER. Without objection, it is so ordered.

The bill (H.R. 2467) was ordered to a third reading, was read the third time, and passed.

PUBLIC INTEREST DECLASSIFICATION ACT OF 2012

Mr. REID. Mr. President, I ask unanimous consent the Homeland Security and Governmental Affairs Committee be discharged from further consideration of S. 3564 and the Senate proceed to its consideration.

The PRESIDING OFFICER. Without objection, it is so ordered.

The clerk will report the bill by title.

The assistant legislative clerk read as follows:

A bill (S. 3564) to extend the Public Interest Declassification Act of 2000 until 2018, and for other purposes.

There being no objection, the Senate proceeded to consider the bill.

# EXHIBIT 4

| 112TH CONGRESS 2d Session | } HOUSE OF REPRESENTATIVES { | REPORT 112–576 |
|---|---|---|

AMENDING THE ELECTRONIC FUND TRANSFER ACT TO LIMIT THE FEE DISCLOSURE REQUIREMENT FOR AN AUTOMATIC TELLER MACHINE TO THE SCREEN OF THAT MACHINE

JUNE 29, 2012.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. BACHUS, from the Committee on Financial Services, submitted the following

# R E P O R T

[To accompany H.R. 4367]

[Including cost estimate of the Congressional Budget Office]

The Committee on Financial Services, to whom was referred the bill (H.R. 4367) to amend the Electronic Fund Transfer Act to limit the fee disclosure requirement for an automatic teller machine to the screen of that machine, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

## PURPOSE AND SUMMARY

H.R. 4367 amends Section 904 of the Consumer Credit Protection Act—commonly known as the "Electronic Fund Transfer Act" (EFTA)—by eliminating the requirement that fee notices be affixed to or displayed on automated teller machines (ATMs). The requirement is unnecessary because ATM operators are required to disclose fees on ATM screens and consumers have the right to decline the transaction without being charged. H.R. 4367 will protect ATM operators from frivolous lawsuits related to this fee notice requirement.

## BACKGROUND AND NEED FOR LEGISLATION

The EFTA and its implementing rule, Regulation E, require ATM operators to display notices in two separate places notifying consumers that they might be charged fees for withdrawing cash from the ATM. The EFTA and Regulation E require that one of these notices must be posted in a prominent and conspicuous location on or at the ATM. The second notice must appear on the screen of the ATM, or on a paper notice issued from the machine, after the

19–006

2

transaction is initiated and before the consumer is irrevocably committed to completing the transaction.

When the provision requiring physical ATM fee disclosures was enacted in 1999, consumers were less familiar with ATM technology. Some consumers may not have known that they might have to pay for using certain ATMs. Because ATM screens were smaller and had lower resolutions in 1999, Congress required ATM operators to display fee notices to consumers both on the ATM screen and in a prominent location on the machine itself. Today, ATMs are more prominent and better understood, screens are much larger, and they display sharper images. Also, unlike before, when many ATMs were not capable of providing the notice on the monitor, every ATM can notify consumers of possible fees today.

But even though the EFTA's physical disclosure requirement has become obsolete, the requirement exposes banks, credit unions and retailers to frivolous lawsuits and unnecessary costs. Under the EFTA, a consumer who uses an ATM that does not have a fee notice physically attached may recover statutory damages of between $100 and $1,000 for each transaction. The law also permits class action lawsuits to recover up to half a million dollars.[1] There is evidence that some plaintiffs are purposefully removing these superfluous notices from ATMs and then filing suits against ATM operators for failing to provide adequate notice on the machine.

Without this legislation, ATM operators may be forced to raise fees or reduce the number of ATMs. This legislation can help ensure consumers will receive appropriate notifications about ATM fees and still have convenient access to their funds.

## HEARINGS

Throughout the 112th Congress, many witnesses have testified before the Subcommittee on Financial Institutions and Consumer Credit about problems associated with the physical ATM notice requirements contained in the EFTA.

On May 9, 2012, the Subcommittee held a hearing entitled "Rising Regulatory Compliance Costs and Their Impact on the Health of Small Financial Institutions." The following witnesses testified at the hearing:

• Mr. William Grant, Chairman, President and Chief Executive Officer, First United Bank & Trust

• Mr. Ed Templeton, President and Chief Executive Officer, SRP Federal Credit Union

• Mr. Samuel Vallandingham, Vice President and Chief Information Officer, First State Bank

• Mr. Terry West, President and Chief Executive Officer, VyStar Credit Union

• Mr. Adam Levitin, Professor of Law, Georgetown University Law Center

• Mr. Mike Calhoun, President, Center of Responsible Lending

On March 14, 2012, the Subcommittee held a field hearing in San Antonio, Texas, entitled "An Examination of the Challenges Facing Community Financial Institutions in Texas." The following witnesses testified at the hearing:

---

[1] 16 U.S.C. § 1693m(a).

3

- Mr. Robert Glenn, President and Chief Executive Officer, Air Force Federal Credit Union
- Mr. George Hansard, President, Pecos County State Bank
- Ms. Maria Martinez, President and Chief Executive Officer, Border Federal Credit Union
- Mr. Cliff McCauley, Executive Vice President, Correspondent Banking, Frost Bank
- Mr. Les Parker, Chairman, President and Chief Executive Officer, United Bank of El Paso de Norte
- Mr. Ignacio Urrabazo, Jr., President, Commerce Bank
- Ms. Janie Barrera, President and Chief Executive Officer, Accion Texas Inc.

On November 16, 2011, the Subcommittee held a legislative hearing entitled "H.R. 1697: The Communities First Act." The following witnesses testified at the hearing:

- Mr. Salvatore Marranca, President and Chief Executive Officer, Cattaraugus County Bank on behalf of the Independent Community Bankers Association
- Mr. O. William Cheney, President and Chief Executive Officer, Credit Union National Association
- Mr. John A. Klebba, President and Chief Executive Officer, Legends Bank, on behalf of the Missouri Bankers Association
- Mr. Fred Becker, Jr., President and Chief Executive Officer, National Association of Federal Credit Unions
- Mr. Arthur E. Wilmarth, Jr., Professor of Law, George Washington University, Executive Director, Center for Law, Economics and Finance
- Mr. Damon Silvers, Director, Policy and Special Counsel, American Federation of Labor and Congress of Industrial Organizations
- Mr. Adam J. Levitin, Professor of Law, Georgetown University Law Center

### COMMITTEE CONSIDERATION

The Committee on Financial Services met in open session on June 27, 2012, and ordered H.R. 4367 favorably reported to the House by voice vote.

### COMMITTEE VOTES

Clause 3(b) of rule XIII of the Rules of the House of Representatives requires the Committee to list the record votes on the motion to report legislation and amendments thereto. There were no record votes taken on amendments or in connection with ordering H.R. 4367 reported to the House. A motion by Chairman Bachus to report the bill to the House with a favorable recommendation was agreed to by voice vote.

### COMMITTEE OVERSIGHT FINDINGS

Pursuant to clause 3(c)(1) of rule XIII of the Rules of the House of Representatives, the Committee has held hearings and made findings that are reflected in this report.

4

### PERFORMANCE GOALS AND OBJECTIVES

Pursuant to clause 3(c)(4) of rule XIII of the Rules of the House of Representatives, the Committee establishes the following performance related goals and objectives for this legislation:

The first objective of H.R. 4367 is to eliminate the requirement that fee notices be affixed to or displayed on ATMs. The requirement is unnecessary because ATM operators are required to disclose fees on an ATM screen and consumers have the right to decline the transaction without being charged. The second objective of H.R. 4367 is to protect ATM operators from frivolous lawsuits related to this notice requirement.

### NEW BUDGET AUTHORITY, ENTITLEMENT AUTHORITY, AND TAX EXPENDITURES

In compliance with clause 3(c)(2) of rule XIII of the Rules of the House of Representatives, the Committee adopts as its own the estimate of new budget authority, entitlement authority, or tax expenditures or revenues contained in the cost estimate prepared by the Director of the Congressional Budget Office pursuant to section 402 of the Congressional Budget Act of 1974.

### COMMITTEE COST ESTIMATE

The Committee adopts as its own the cost estimate prepared by the Director of the Congressional Budget Office pursuant to section 402 of the Congressional Budget Act of 1974.

### CONGRESSIONAL BUDGET OFFICE ESTIMATE

Pursuant to clause 3(c)(3) of rule XIII of the Rules of the House of Representatives, the following is the cost estimate provided by the Congressional Budget Office pursuant to section 402 of the Congressional Budget Act of 1974:

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, June 29, 2012.*

Hon. SPENCER BACHUS,
*Chairman, Committee on Financial Services,*
*House of Representatives, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has prepared the enclosed cost estimate for H.R. 4367, a bill to amend the Electronic Fund Transfer Act to limit the fee disclosure requirement for an automatic teller machine to the screen of that machine.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Susan Willie.

Sincerely,

DOUGLAS W. ELMENDORF.

Enclosure.

5

*H.R. 4367—A bill to amend the Electronic Fund Transfer Act to limit the fee disclosure requirement for an automatic teller machine to the screen of that machine*

Enacting H.R. 4367 would affect direct spending and revenues; therefore, pay-as-you-go procedures apply. The bill would require the Consumer Financial Protection Bureau (CFPB) and the Federal Reserve Board to revise certain disclosure regulations. Changes in the CFPB's workload are reflected as increases or decreases in its mandatory appropriations, while changes in the workload of the Federal Reserve Board are reflected in the budget as changes in revenues. Based on information from those agencies, CBO estimates that revising those regulations would not have a significant effect on their workload and any change in direct spending (for the CFPB) or revenues (for the Federal Reserve Board) would be insignificant. Implementing H.R. 4367 would not affect spending subject to appropriation.

Under current law, operators of automatic teller machines (ATMs) are required to disclose fees charged to use the machine by posting a notice both on the equipment itself and on the computer screen of the ATM. H.R. 4367 would eliminate the requirement that the fee notice be displayed on the machine, allowing the disclosure requirement to be met if the notice appears only on the ATM screen.

H.R. 4367 contains no intergovernmental or private-sector mandates as defined in the Unfunded Mandates Reform Act and would not affect the budgets of state, local, or tribal governments.

The CBO staff contacts for this estimate are Susan Willie (for the CFPB) and Barbara Edwards (for the Federal Reserve Board). The estimate was approved by Theresa Gullo, Deputy Assistant Director for Budget Analysis.

### FEDERAL MANDATES STATEMENT

The Committee adopts as its own the estimate of Federal mandates prepared by the Director of the Congressional Budget Office pursuant to section 423 of the Unfunded Mandates Reform Act.

### ADVISORY COMMITTEE STATEMENT

No advisory committees within the meaning of section 5(b) of the Federal Advisory Committee Act were created by this legislation.

### APPLICABILITY TO LEGISLATIVE BRANCH

The Committee finds that the legislation does not relate to the terms and conditions of employment or access to public services or accommodations within the meaning of the section 102(b)(3) of the Congressional Accountability Act.

### EARMARK IDENTIFICATION

H.R. 4367 does not contain any congressional earmarks, limited tax benefits, or limited tariff benefits as defined in clause 9 of rule XXI.

6

SECTION-BY-SECTION ANALYSIS OF THE LEGISLATION

*Section 1. Fee disclosure requirement*

This section amends Section 904(d)(3)(B) of the Consumer Credit Protection Act (15 U.S.C. 1693b(d)(3)(B)) to eliminate the requirement that ATM operators post in a prominent and conspicuous location on or at the ATM a notice that a fee is imposed by the operator when consumers withdraw cash from the ATM.

CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3(e) of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

## CONSUMER CREDIT PROTECTION ACT

\*       \*       \*       \*       \*       \*       \*

# TITLE IX—ELECTRONIC FUND TRANSFERS

\*       \*       \*       \*       \*       \*       \*

## § 904. Regulations

(a) \* \* \*

\*       \*       \*       \*       \*       \*       \*

(d) APPLICABILITY TO SERVICE PROVIDERS OTHER THAN CERTAIN FINANCIAL INSTITUTIONS.—

(1) \* \* \*

\*       \*       \*       \*       \*       \*       \*

(3) FEE DISCLOSURES AT AUTOMATED TELLER MACHINES.—

(A) \* \* \*

(B) NOTICE [REQUIREMENTS.—

[(i) ON THE MACHINE.—The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

[(ii) ON THE SCREEN.—The notice required under clauses (i) and (ii)] *REQUIREMENT.—The notice required under clauses (i) and (ii)* of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction[, except that during the period beginning on the date of the enactment of the Gramm-Leach-Bliley Act and ending on December 31, 2004, this clause shall not apply to any automated teller machine that lacks the technical capability to disclose the notice on the screen or to issue a paper notice after

7

the transaction is initiated and before the consumer is
irrevocably committed to completing the transaction.].

\*        \*        \*        \*        \*        \*        \*

○

# EXHIBIT 5

veterans that they had received in several years. I am equally proud that we are doing right by our veterans by moving the COLA bill increase this year in the form of H.R. 4114.

I urge all Members to support this critical piece of legislation.

Mr. MILLER of Florida. Mr. Speaker, I reserve the balance of my time.

Ms. BROWN of Florida. Mr. Speaker, last month we were honored with the presence of over 400 Montford Point Marines in the Capitol to receive the Congressional Gold Medal. From 1942 to 1949, almost 20,000 African American Marines experienced basic training at Camp Montford Point near the New River in Jacksonville, North Carolina.

These heroes fought on two fronts, at home against discrimination, and across the sea to defend our Nation. This highest civilian award in the United States was first presented during the Revolutionary War to George Washington. It is fitting that this latest award should go to those men who, years before Jackie Robinson and Rosa Parks, joined the Marines to defend their country.

During this week when we are going to be debating the Affordable Care Act, we need to discuss a project that affects veterans health in my State of Florida. On July 1, the VA paid an additional $500,000 to rent a portable operating room for a project that is 95 percent complete in the Miami VA Medical Center. When this renovation was first proposed, two minor projects, each costing $10 million, were sponsored to fulfill the requirements of the project.

I visited the medical center last month and heard directly from the administrators of the facility about the project. The planners on the ground soon realized that patients could have been put at risk due to contamination of the operating rooms by the construction on the other side of the room.

Veterans health care was being put at risk, and rather than let this happen, it was decided by those who know the veterans health the best—those at the health facilities—to combine the projects into one and rent the portable operating rooms.

We need a procedure to give the Secretary the ability to correct these kinds of projects and not waste taxpayers' money. I will soon be introducing legislation to give the Secretary the help he needs to save taxpayers money.

In the last Congress, our Democratic leadership in the House and the Senate, with President Barack Obama, were able to pass the largest increase in the veterans budget in history. We also passed advanced appropriations for the VA health care so that veterans would not be subject to the deadline that Congress seems to miss every year to pass a proper budget. It allows the VA to plan for the following year's health care needs and reassure veterans that they will be able to get the care that they need.

We also passed the caregivers law to help those who are taking care of the members of the military, funded PTSD and TBI mental health programs, homeless programs and rural health care in the veterans homes. It is the least we can do for those who have given so much to protect our freedom. We did not just talk the talk but walked the walk.

And since we're discussing repeal of the health care law tomorrow, I would like to briefly discuss how, in fact, the Affordable Care Act benefits our Nation's veterans and all Americans. Although not a perfect bill—and no bill is since there are many compromises made—this is a perfect start, and attempting to obtain universal health care has been a primary goal of every single President and Congress since the days of Franklin Delano Roosevelt, who had fought for quality, accessible health care insurance reform for all Americans. And now, 75 years later, after the Supreme Court ruling just over a week ago, our Nation has finally attained that goal.

Millions of Americans have already come to rely on the wide-ranging and lifesaving benefits of the Affordable Care Act.

And let me just say, I keep hearing ObamaCare. Let me just be clear. Obama cares for the American health care.

Before Congress passed the Affordable Care Act, nearly one in five citizens in the wealthiest country in the world had little or no hope of affordable insurance and access to regular health care. When fully implemented, the Affordable Care Act will cover an additional 30 million Americans and 3.8 million African Americans who otherwise would remain uninsured.

Already under the Affordable Health Care Act, 17 million children with pre-existing conditions can no longer be denied coverage; 105 million Americans no longer have a lifetime limit on their coverage; 32.5 million seniors received free preventive service in 2011; 54 million Americans in private plans have received free preventive services; 6.6 million young adults up to the age of 26 have obtained insurance through their parents' plan; and 5.2 million seniors and disabled people save an average of $704 each on their prescription drugs; 360,000 small businesses received tax credits to help them afford coverage for 2 million workers; 13 million families will receive insurance premium rebates averaging $151 in 2012.

However, instead of debating a health care repeal, we should be debating a construction reauthorization bill to deal with the waste of taxpayer dollars, like I indicated in Miami—$500,000 this month for a portable operating room.

In closing, let's get to work.

I yield back the balance of my time.

Mr. MILLER of Florida. Mr. Speaker, I think it's rather interesting that my colleague would talk about the supposed great things that are in the ObamaCare bill and not talk about how it's going to be paid for—in fact, the largest tax increase on the American people that this Congress has ever placed on their backs.

They would make you believe that it was all free, but it's not. It's going to cost somebody, and that's going to be the American citizens.

□ 1630

I also want to talk about the Miami project very quickly. I had to go down and actually visit and then pressure the VA Secretary to make sure that the director of the Miami Medical Center left her job because she was not doing what she was supposed to do. In fact, this was, in a way, a skirting of the rules and of the laws by splitting a project into two, thus costing the taxpayers of the United States considerably more money, including the cost of the rental of the trailers that are being used as temporary operating rooms.

We continue to wait for the Department of Veterans Affairs to actually make an official request for us to come forward and take care of this problem that exists in Miami, specifically because of, I think, poor administrative oversight not only at the administrative level in Miami but with the VISN Director in VISN 8 as well.

GENERAL LEAVE

Mr. MILLER of Florida. Mr. Speaker, at this point, I ask unanimous consent that all Members have 5 legislative days to revise and extend their remarks and to include any extraneous materials that they may have on H.R. 4114.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from Florida?

There was no objection.

Mr. MILLER of Florida. Mr. Speaker, the Senate itself hasn't been able to pass a budget for almost 4 years, and they cannot pass an appropriations bill on time, so I do support the advanced appropriation that this House supported and that ultimately was signed into law. With that, I encourage all Members to support H.R. 4114.

I yield back the balance of my time.

The SPEAKER pro tempore. The question is on the motion offered by the gentleman from Florida (Mr. MILLER) that the House suspend the rules and pass the bill, H.R. 4114.

The question was taken; and (two-thirds being in the affirmative) the rules were suspended and the bill was passed.

A motion to reconsider was laid on the table.

─────────────

ELECTRONIC FUND TRANSFER ACT AMENDMENT

Mr. LUETKEMEYER. Mr. Speaker, I move to suspend the rules and pass the bill (H.R. 4367) to amend the Electronic Fund Transfer Act to limit the fee disclosure requirement for an automatic teller machine to the screen of that machine.

The Clerk read the title of the bill.

The text of the bill is as follows:

H.R. 4367

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

SECTION 1. FEE DISCLOSURE REQUIREMENT.

Section 904(d)(3)(B) of the Consumer Credit Protection Act (15 U.S.C. 1693b(d)(3)(B)) (commonly known as the "Electronic Fund Transfer Act") is amended—

(1) by striking "REQUIREMENTS." and all that follows through "The notice required under clauses (i) and (ii)" and inserting "REQUIREMENT.—The notice required under clauses (i) and (ii)" after "NOTICE"; and

(2) by striking ", except that during the period beginning" and all that follows and inserting a period.

The SPEAKER pro tempore. Pursuant to the rule, the gentleman from Missouri (Mr. LUETKEMEYER) and the gentleman from Georgia (Mr. DAVID SCOTT) each will control 20 minutes.

The Chair recognizes the gentleman from Missouri.

GENERAL LEAVE

Mr. LUETKEMEYER. Mr. Speaker, I ask unanimous consent that all Members have 5 legislative days in which to revise and extend their remarks and to add extraneous material to this bill.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from Missouri?

There was no objection.

Mr. LUETKEMEYER. Mr. Speaker, I yield myself such time as I may consume.

Today, we are considering one of the most commonsense bills seen in some time. This bill provides a real solution to a real problem that is impacting banks, credit unions, and merchants nationwide.

Regulation E currently mandates that ATM fee disclosures appear both in physical placard or in sticker form on the machines as well as through an on-screen electronic notification. Unfortunately, some individuals have seen the potential to make a quick buck off a frivolous claim and have begun to remove stickers from ATMs across the country, thereby placing financial institutions and merchants out of compliance. This is exactly what has happened to some small financial institutions in my district and throughout Missouri. Someone was traveling through the State, removing stickers from ATM machines, and then was offering to settle with the banks for several thousands of dollars per machine or the banks would face lawsuits.

The premise of this bill is simple: to eliminate an outdated and unnecessary regulatory burden facing merchants and financial institutions while continuing to ensure consumer protections for all ATM users through required on-screen fee disclosures.

It is important to recognize that the Consumer Financial Protection Bureau has also expressed interest in eliminating this duplicative fee disclosure requirement. In December of 2011, the CFPB asked the public to comment on the elimination of this requirement. However, during the public comment period, the CFPB admitted that it may not be able to remove the duplicative disclosure requirement and that it would be up to Congress to take action.

Today, Mr. Speaker, it is time for us to take action.

H.R. 4367 is supported by the National Association of Federal Credit Unions, the Credit Union National Association, the American Bankers Association, the Independent Community Bankers of America, the United States Chamber of Commerce, the Electronic Funds Transfer Association, the Consumer Bankers Association, The Clearing House, the Food Marketing Institute, the Financial Services Roundtable, the National Association of Convenience Stores, the American Gaming Association, and the ATM Industry Association as well.

This legislation has broad bipartisan support from its 145 cosponsors. Among them is the gentleman from Georgia (Mr. SCOTT), who has been a great partner on this initiative, and I thank him for his efforts.

Again, I want to remind my colleagues that this bill does not in any way alter the mandate for on-screen fee disclosures, meaning that customers will have a clear understanding of what they will be charged before they complete their ATM transactions.

It is time to put an end to these frivolous lawsuits. I thank my colleagues for the sponsorship of this legislation, and I ask all Members to support this bill today.

With that, Mr. Speaker, I reserve the balance of my time.

Mr. DAVID SCOTT of Georgia. Mr. Speaker, I yield myself such time as I may consume.

First of all, let me say that this is very much bipartisan legislation in that it has been sponsored by both Democrats and Republicans. I am very, very pleased to have as an original cosponsor on this and to have worked very closely with Mr. LUETKEMEYER, who has done an admirable job in providing leadership on a much, much needed piece of legislation, which is H.R. 4367. As I said, I am proud to be an integral part of moving forward a very timely, reasonable, and vital piece of legislation.

Let me just say at the outset, Mr. Speaker, that our banking system, our retail system, our credit unions all sit at the center—at the epicenter—of this Nation's great economic system, which is facing tremendous challenges. As Mr. LUETKEMEYER said, we are faced with people who are basically scam artists, those who will go in and remove the labeling off the ATM machines, knowing that the penalty is upwards of one half a million dollars, and then will try to bring class action lawsuits against these financial institutions in very tough economic times. So this legislation has been developed to address this and to fix this so that our banking industry and our financial services industry will not have this threat over them.

What it would do is repeal the requirement for both a physical placard as well as an electronic notice disclosing the transaction fees on the ATM screens. Currently, as it works now, if an ATM machine does not display a physical placard, a financial institution—a bank, a credit union or our retailers—can be subject to a class action lawsuit, which would potentially amount to, as I said, one half a million dollars, or 1 percent of its net worth. This penalty has the potential of prompting bogus lawsuits against financial institutions simply due to a lack of the physical placard, even when the electronic notice is shown to a customer, perhaps because the placard was removed by a third party. So you can see that this is not fair for these institutions to be faced with up to a half million dollars in penalty fees, especially in these tough economic times. At the same time, many of these institutions continue to struggle to maintain standard operations while being faced with our current economic climate.

☐ 1640

Mr. Speaker, let me just talk about that for a moment because there have been 31 bank failures in this country this year alone. About 3 weeks ago, three banks shut their doors, including the Security Exchange Bank in Marietta, Cobb County, Georgia, which is located in my district. As a matter of fact, in Georgia alone, 78 banks have closed their doors since our crisis began.

Georgia leads the Nation, unfortunately, in bank closures. That's why I am so particularly concerned about it and so pleased to have this measure pass, because this sensible legislation that we consider today would remove the threat of legal action against financial institutions—a bank or a credit union—simply for the lack of the physical placard at one of its ATM machines.

Passage of this bill, as Mr. LUETKEMEYER pointed out, will still provide the consumer with the protections that they need because a notice informing them of any fees will still be required upon the start of a transaction on the ATM screen. In addition, consumers will still be able to benefit from the convenience that the estimated 445,000 ATMs in operation in this country provide.

I'm very proud to have worked on this bill. It's very timely. It's very important for our economy that we move with this bill. The bill certainly deserves the strong bipartisan support that we have, and it's been a pleasure to work with Mr. LUETKEMEYER on it. I urge my colleagues to support this measure today.

With that, Mr. Speaker, I reserve the balance of my time.

Mr. LUETKEMEYER. Mr. Speaker, it is now my distinct honor to yield such time as he may consume to the gentleman from Alabama (Mr. BACHUS) to

Case 4:10-cv-03936 Document 72 Filed in TXSD on 12/28/12 Page 24 of 24

speak on the bill, our distinguished chairman on the Financial Services Committee.

Mr. BACHUS. Mr. Speaker, I came here to compliment the two gentlemen who have spoken on this bill, who are the cosponsors of a bipartisan bill.

When I first heard about this legislation, I thought, like most legislation this year, it won't go anywhere. I thought it may pass the House, but it may not pass the Senate. I understand that with this particular legislation, that our Senate colleagues are waiting for it and they're ready to act upon it.

Mr. SCOTT brought up, I think, a salient point when he said that we're having many banks and credit unions who are struggling, because when people don't have jobs, they can't pay back their loans. Our banks and credit unions are trying to cope with the added expense of more regulation. Particularly at a time like that, but at any time, for people to take advantage of a statute that is intended to protect the American people is really audacity and greed in its purest sense.

I'm an attorney, and I can tell you that 999 out of 1,000 attorneys or former attorneys would absolutely be enraged to find that very few of their colleagues are taking advantage of Regulation E and the Electronic Fund Transfer Act to sue these institutions on lawsuits that are totally against the public interest, and particularly are against the interests of those living in low-income areas and high-crime areas. The people in those areas are coping with so much that to add to that, having an ATM machine removed from that location or from a low-income area, just adds another expense for people who have very little means of financing their life today. That's what's happening.

Either the vandals themselves are going and vandalizing the sticker that we've all seen—we've all used an ATM. We've all seen the sticker there. We probably didn't notice the sticker there because what really caught our attention is when we get on the screen and we see that same notice, but that notice actually on the screen requires us to affirmatively say "yes," we will agree to it. So people today probably don't even notice that sticker. The few people who noticed that sticker and took advantage of it were people that were up to no good, people that were willing to bring what some of us would call a "frivolous lawsuit."

These lawsuits can ask for a half million dollars worth of damages. And because it is actually a statutory failure to have it, these lawsuits sometimes result in a $100,000 or $200,000 judgment. They're also resulting in these ATMs not being located in areas that are subject to vandalism. Of course, almost any area could be subject to it, but we've penalized those Americans who are least able to afford to travel a greater distance for the convenience of an AMT machine.

As Mr. LUETKEMEYER and Mr. SCOTT said, people come up; they scrape it off.

Some of these appear to be well-organized efforts by the very people that bring the lawsuit to go out and do these in an organized manner among hundreds of machines. They then come in and file a class action.

Mr. LUETKEMEYER, at one time, was a banker in a small Missouri community. And in most cases, particularly a small credit union or a community bank or a local bank, they can't afford to battle these for $50,000 or $100,000—it actually may be a big law firm bringing these lawsuits—so they settle them for $50,000. This will put an end to that.

Let me tell you, no one on the Financial Services Committee expressed any doubt about this legislation. I don't think anyone would, other than those people who are complicit in vandalizing these machines and making money on what we sometimes called "unintended consequences." I tell you, it certainly was unintended. If we had, in our imagination, sat down for days and said what is the worst thing that could happen by requiring us to put a sticker on as well as electronic notice, we would have never come up with this. We would have never come up with the ingenuity of some people to take advantage of the law. But that's what's happened here.

Today, I think, unanimously, hopefully, we're going to shut the door on this practice and send this bill over to the Senate, particularly for areas where there is high vandalism in our rural communities. We're going to set a wrong right.

Let me say that this is a model for how this Congress ought to operate, of coming together, having a consensus, coming up with good, commonsense legislation that benefits the public and reduces unnecessary costs and puts what I consider and I think is criminal behavior out of business. We're going to put some criminals out of business with this legislation.

Mr. LUETKEMEYER, Mr. SCOTT, and all Members who are cosponsoring this bill, I commend each and every one of you.

Mr. DAVID SCOTT of Georgia. Mr. Speaker, in closing I certainly would just like to say how important this legislation is.

As the chairman of our Financial Services Committee, Chairman BACHUS, just stated, these are sophisticated individuals. These are people who know the system. That's why I refer to them as scam artists.

This is a racket, and it's a racket that we need to put out of business that's causing tremendous headaches, tremendous difficulties for the heart of our fine economic system, which is our banking system, our commercial system. This will go a long way in helping to take away a very superfluous but serious enough threat.

The other thing about this that's very fine is we hear a great cry among the American people for great bipartisanship. Here's a great example of Democrats and Republicans working

together for the good of the United States of America.

Thank you very much for working with me on this, and I appreciate having an opportunity to work with you.

And since I have no other speakers, I yield back the balance of my time.

□ 1650

Mr. LUETKEMEYER. Mr. Speaker, again, I want to thank Mr. SCOTT from Georgia for helping this bill along. As he articulated, Georgia has had an inordinate number of banks this past year, 2 or 3 years, that have suffered and have gone out of business.

This is just another situation here where this bill may not be a very big bill in the light of things, but it certainly is going to relieve some stress on some of our institutions, also some exposure for some of our merchants. I think, as our distinguished chairman articulated, it's time to put some of these folks out of business as well.

I have had, unfortunately, some of these things go on in my district, and this is how it was brought to my attention. But I think we have come together as a group, and we had a great meeting the other day in Financial Services and had strong bipartisan support. We have the support in the Senate.

With that, I will close and ask for the support of the body.

I yield back the balance of my time.

The SPEAKER pro tempore. The question is on the motion offered by the gentleman from Missouri (Mr. LUETKEMEYER) that the House suspend the rules and pass the bill, H.R. 4367.

The question was taken.

The SPEAKER pro tempore. In the opinion of the Chair, two-thirds being in the affirmative, the ayes have it.

Mr. DAVID SCOTT of Georgia. Mr. Speaker, on that I demand the yeas and nays.

The yeas and nays were ordered.

The SPEAKER pro tempore. Pursuant to clause 8 of rule XX, further proceedings on this question will be postponed.

## HYDROPOWER REGULATORY EFFICIENCY ACT OF 2012

Mrs. McMORRIS RODGERS. Mr. Speaker, I move to suspend the rules and pass the bill (H.R. 5892) to improve hydropower, and for other purposes.

The Clerk read the title of the bill.

The text of the bill is as follows:

H.R. 5892

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

SECTION 1. SHORT TITLE; TABLE OF CONTENTS.

(a) SHORT TITLE.—This Act may be cited as the "Hydropower Regulatory Efficiency Act of 2012".

(b) TABLE OF CONTENTS.—The table of contents of this Act is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. Findings.
Sec. 3. Promoting small hydroelectric power projects.
Sec. 4. Promoting conduit hydropower projects.