IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LISA MABARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 4:10-cv-3936 |
| | ) | |
| HOMETOWN BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY OF HOMETOWN BANK, N.A. TO
RESPONSE MOTION TO CERTIFY CLASS
AND DEFENDANT'S MOTIONS TO DISMISS**

Hometown Bank, N.A. ("HTB") files this Reply pursuant to this Court's Order of January 7, 2013.

1.      In its Notice of Filing of Supplemental Authority Regarding Plaintiff's Motion to Certify Class and Defendant's Motions to Dismiss, HTB provided the Court with a copy of H.R. 4367,[1] which, in the words of one of the bill's sponsors, "would . . . repeal the requirement for both a physical placard as well as an electronic notice disclosing the transaction fees."[2]

2.      Congress's purpose in unanimously enacting H.R. 4367 was made abundantly clear in the Report of the House Committee on Financial Services as well as in the statements of various legislators in the consideration of the bill in the House and Senate.[3]  Representative Scott explained the legislation is intended to stop class action lawsuits:

> Currently, as it works now, if an ATM machine does not display a physical placard, a financial institution – a bank, a credit union or our retailers – can be subject to a class action lawsuit, which would potentially amount to, as I said, one half a million dollars, or 1 percent of its net worth.  <u>This penalty has the potential of prompting bogus lawsuits against financial institutions simply due to a lack of the physical placard, even when the electronic notice is shown to a customer, perhaps because the placard was removed by a third party.</u>  So you can see that

---

[1] Notice (ECF 72), Ex. 1.

[2] Notice, Ex. 5 at p. 2.

[3] Notice at ¶¶6, 8-10.  (Emphasis added).

this is not fair for these institutions to be faced with up to a half million dollars in penalty fees, especially in these tough economic times. At the same time, many of these institutions continue to struggle to maintain standard operations while being faced with our current economic climate.

3.      In this case there is no dispute that all users of HTB's ATMs received an <u>actual</u> on-screen notice of such fees and in fact could not complete the ATM transaction without acknowledging such notice.

4.      It is also undisputed in this case that the Plaintiff, Lisa Mabary, is a serial class action plaintiff. She has filed two similar suits against Spirit of Texas Bank and MemberSource Credit Union in the Southern District of Texas, in addition to this lawsuit against HTB.[4]  Mabary has not, however, confined her filings (represented by the same lead counsel) to the Southern District of Texas, or even to asserting claims under the EFTA; she has also filed six other suits across four federal district courts in two states.[5]

5.      It could hardly be clearer that this suit and the other similar EFTA suits filed by this Plaintiff are exactly the type of suits which members of Congress described as "bogus" or "frivolous" and unanimously intended to halt. As Representative Scott said:

> This is a racket, and it's a racket that we need to put out of business that's causing tremendous headaches, tremendous difficulties for the heart of our fine economic system, which is our banking system, our commercial system. This will go a long way in helping to take away a very superfluous but serious enough threat.[6]

---

[4] *Mabary v. Spirit of Texas Bank*, No. 4:10-cv-02834 (S.D. Tex. Aug. 10, 2010); *Mabary v. MemberSource Credit Union*, No. 4:11-cv-01946 (S.D. Tex. May 20, 2011). HTB requests the Court to take judicial notice of these filings and the Court's own records pursuant to Fed. R. Evid. 201.

[5] *Mabary v. BSCH Mgt. Co.,* No. 3:11-cv-00217-D (N.D. Tex. Feb. 4, 2011) [Fair and Accurate Credit Transaction Act ("FACTA")]; *Mabary v. BB Franchising, Inc.,* No. 4:11-cv-00621 (E.D. Tex. Sept. 27, 2011) [FACTA]; *Mabary v. Buison, Inc.*, No. 4:11-cv-0695 (E.D. Tex. Oct. 25, 2011) [FACTA]; *Mabary v. Madame Tussaud Las Vegas, LLC*, No. 2:11-cv-01803 (D. Nev. Nov. 9, 2011) [EFTA]; *Mabary v. Ditronics Fin. Servs., LLC*, No. 2:11-cv-01883 (D. Nev. Nov. 22, 2011) [EFTA]; *Mabary v. ELYI Group, Inc.* No. 2-12-cv-00318 (D. Nev. Feb. 28, 2012 [EFTA]; *Mabary v. Presidio Hotel Fort Worth, LP;* No. 4:11-cv-00717-Y [EFTA]; *Mabary v. ATMM USA, LLC*, No. 4:11-cv-00717-Y (N.D. Tex.) [EFTA]; *Mabary v. Cardtronics USA, Inc.*, 3:11-cv-02877-G (N.D. Tex.) [EFTA].

[6] Notice, Ex. 5 p. 3.

6.    Plaintiff's Response[7] does not, and could not, contest the facts as set forth above nor challenge the characterization by members of Congress of these types of suits.  Rather, and in the face of the actions by a unanimous Congress, approved by the President, the Plaintiff seeks one last opportunity to continue with litigation described as bogus, frivolous and a racket by the sponsors of the repealing legislation.

7.    Before addressing Plaintiff's Response, it is important to again note what this case is not about – it is not a case where anyone suffered any real or actual injury in fact.  As HTB has demonstrated in prior motions, that means there is no case or controversy as required by Article III of the Constitution.  *Vermont Agency of Nat. Res. v. United States ex rel. Stevens,* 529 U.S. 765, 772 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

8.    Plaintiff argues that H.R. 4367 cannot be applied to this case, even though there has been no injury in fact to the Plaintiff or any potential class member, no certification of the class, and no final judgment entered, because that would make the statute retroactive.[8]

9.    From the earliest days of the Republic it has been the general rule that a Court should apply the law in existence at the date it renders its decision:

> It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not.  But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.  If the law be constitutional, and of that no doubt in the present case has been expressed, I know of no court which can contest its obligation.

*United States v. Schrooner Peggy,* 5 U.S. 103, 110 (1801); *see also United States v. Six Fermenting Tubs*, No. 16,296, 1868 U.S. Dist. LEXIS 94, at *7 (D. Wis. 1868):

---

[7] Plaintiff makes the statement that "the passage of H.R. 4367 does not support decertification of the class that this Court properly certified."  Plf.'s Resp. (ECF 73), at p. 1.  Plaintiff is of course incorrect substantively, as demonstrated hereafter, and procedurally.  This Court announced at the hearing on December 5, 2011 that the class was being decertified.  On December 21, 2011 this Court entered an Order stating "[t]he class in this case has been decertified." ECF 52, at p. 1.

[8] Plf.'s Resp., at p. 1.

> It is an established rule, that where an action for the recovery of a penalty, or a proceeding to enforce a forfeiture prescribed in a legislative act, is pending at the time of the repeal of the act, or instituted after the repeal, such repeal is a bar to the action or proceeding, in the absence of a saving clause in the repealing act.

10.     In fact, when Congress repeals a statute "[f]or more than a century 'the general rule . . . [has been] that when an act of the legislature is repealed, it must be considered, except as to transactions past and closed, as if it never existed." *Yakima Valley Memorial Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 934 (9th Cir. 2011) (quoting *Ex Parte McCardle,* 74 U.S. 506, 514 (1868)).

11.     *Landgraf v. USI Film Products*, 511 U.S. 244 (1994) did not change this basic rule.  However, *Landgraf* did create a <u>presumption</u> against retroactive application of a change in the law if the change would (1) impair vested rights of private parties, (2) create a new obligation, or (3) attach a new disability, as to past transactions.  *Id.* at 269.  It is clear that if Plaintiff has any possible argument in this regard it has to be one based on a claim that HTB had an obligation to provide a pointless notice, the other reasons being clearly inapplicable. Although not the sole area of concern, the *Landgraf* Court described the primary concern with respect to engaging the presumption as follows:

> The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance.

*Id.* at 271 (footnote omitted).

12.     In the decision in *Holmes v. Air Liquide USA LLC,* No. H-11-2580, 2012 WL 267194 (S.D. Tex. Jan. 30, 2012), *aff'd on different grounds*, 2012 WL 5914863 (5th Cir. Nov. 26, 2012), this Court "found that the rights of contracting parties were substantive."  2012 WL 267194, at *12.  This Court also cited *Landgraf* and noted its emphasis on "contractual or property rights" because of the importance in such areas of the need for "predictability and stability."  *Id.* at *12-13.

**REPLY OF HOMETOWN BANK, N.A. TO RESPONSE MOTION**
**TO CERTIFY CLASS AND DEFENDANT'S MOTIONS TO DISMISS**                                    **Page 4**

13.     It is clear from even a cursory review of the legislative history of H.R. 4367 that it was Congress's purpose and intent to put a halt to these kinds of lawsuits.

14.     The issue for this Court is then whether this lawsuit, with all of its obvious and previously raised defects, should survive that clear intent.   To that end, *Landgraf* provides guidance.   First, there is no contractual or property right involved in this case.   The only alleged claim involved here, even according to Plaintiff, is "to receive on-machine fee notices" based on a statute.[9]   That is hardly a contract or property right.   Second, there is no basis for concluding that there is any need for "predictability and stability" which would justify failing to apply H.R. 4367.   It should be clear beyond reasonable question that consumers, other than serial filers such as Plaintiff, had no interest in such external notices and obviously did not rely on the existence of such notices in conducting an ATM transaction.   Of course even before the user actually conducted the ATM transaction, the consumer had actual notice of the fee and acknowledged it.   The only group who arguably relies on this absence of notice are the very people Congress intended to shut down by passing H.R. 4367, this Plaintiff.[10]

15.     There is of course also no "vested right" in this case.   The courts have long held that there is no vested right where a cause of action is based on a statute and that statute is repealed.   *See, e.g., Ewell v. Daggs*, 108 U.S. 143, 150-51 (1883).   As the Texas Supreme Court noted in *National Carloading Corp. v. Phoenix-El Paso Express,* 176 S.W.2d 564, 569 (Tex. 1944), "The courts are generally agreed that rights of action based upon purely statutory grounds may be abolished by the legislature even after they have accrued. …"   *See also General Motors Acceptance Corp. v. Saliba*, 260 F.2d 262, 263 (5th Cir. 1958) [Georgia law]; *Mont Belvieu Square Ltd. v. City of Mont Belvieu,* 27 F.Supp. 2d 935, 941-42 (S.D. Tex. 1998) [Texas law].

---

[9] Plf.'s Resp., at p. 2.

[10] It is also noteworthy that other than this Plaintiff, and two or three other plaintiffs represented by the same counsel in the other Texas federal districts, no person purporting to be truly aggrieved by the absence of such notice has stepped forward to complain.

16.    In *RTC v. Fleischer,* 862 F.Supp. 309 (D. Kan. 1994), the RTC filed suit against the former officers and directors of the failed Franklin Savings Association based on claims of negligence or negligent breach of fiduciary duty.   While the suit was pending the Kansas legislature amended its statutes to provide for liability only for specified conduct, not including negligence.   As described by the Court, the issue was that if the Court applied the new statute, "it would have the effect of eliminating the RTC's accrued actions for negligence of breach of fiduciary duty."   *Id.* at 311.   The RTC argued that to apply the statute would strip it of "vested property rights."   *Id.* at 313.   Although ultimately certifying the specific issue to the Kansas Supreme Court, the court noted that many federal courts have held that rights in tort do not vest until reduced to a final judgment:

> There are a number of federal cases that hold that an accrued tort action is not a vested property right.  *See Arbour v. Jenkins,* 903 F.2d 416 (6th Cir. 1990) (the fact that a statute is retroactive does not make it unconstitutional because a legal claim affords no definite or enforceable property right until reduced to final judgment); *Sowell v. American Cyanamid Co.,* 888 F.2d 802, 805 (11th Cir. 1989) ("a legal claim affords no definite or enforceable property right until reduced to final judgment"); *In Re Consol. U.S. Atmospheric Testing Litigation*, 820 F.2d 982, 988 (9th Cir. 1987) (a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained); *Hammond v. United States,* 786 F.2d 8, 11 (1st Cir. 1986) ("[b]ecause rights in tort do not vest until there is a final, unreviewable judgment, Congress abridged no vested rights of the plaintiff by enacting §2212 and retroactively abolishing her cause of action in tort").   Each of these courts, applying the rational basis standard of due process review, upheld the constitutionality of statutes that retroactively abolished accrued causes of action in tort.

17.    In *RTC v. Scott*, 887 F. Supp. 937 (S.D. Miss. 1995), the RTC asserted claims against a former officer and director of a failed savings and loan.  After the challenged conduct occurred, the legislature enacted a statute providing that the minimum level of culpability for officers or directors would be gross negligence.   The defendant moved to dismiss the negligence based claim relying on the new statute.   The RTC argued that to apply the statute would "affect accrued rights" of the RTC.   *Id.* at 941.   Relying on Mississippi law, the district court held that RTC had no vested right because there was no judgment:

With respect to Mississippi state law, the Mississippi Supreme Court has stated that a vested property right in a tort action does not arise until "*after . . .* [that claim] has been reduced to a judgment." *State v. Ladner*, 512 So.2d 1271 (Miss. 1987).   In view of such a pronouncement, the Court rules that RTC had no vested right in its tort claims such that the abrogation of those claims by legislative enactment could constitute a deprivation of a property right in violation of due process.

18.      *In Cooperativa De Ahorro Y Credito Aguada v. Kidder*, 993 F.2d 269, 273 n.11 (1st Cir. 1993), the court of appeals also rejected the argument that rights vest before there is a final judgment:

It is well established that a party's property right in a cause of action does not vest "until a final, unreviewable judgment has been obtained." *Hammond v. United States,* 786 F.2d 8, 12 (1st Cir. 1986).   *See also Hoffman v. City of Warwick,* 909 F.2d 608, 621 (1st Cir. 1990).   At the time that Section 27A was signed into law, no final judgment had been entered in the instant case. Accordingly, defendants' argument that Section 27A deprived them of a vested property right is without merit.

*Id.* at 942.

19.      The effect of H.R. 4367 was to eliminate what is nothing more than a statutory basis for, at best, a tort claim.   The repeal of that statute did not impact any vested right because there is no vested right.

20.      Finally, and at an absolute minimum, the enactment of H.R. 4367 would preclude any class claims based on the prior statute.   As the Supreme Court made clear in *Smith v. Bayer Corp.*, 131 S. Ct. 2368 (U.S. 2011), class members are not "parties" to the litigation until a class is certified.   *Id.* at 2379-81.   Here the basis of any class claim has ceased to exist prior to certification.   Consequently, there is nothing for the Court to certify since Rule 23 cannot possibly be allowed to revive a statute which has been repealed by Congress  before any claim was actually filed.

Where, HTB requests that class certification be denied and that this suit be dismissed.

Respectfully submitted,

/s/ William Frank Carroll
William Frank Carroll

COX SMITH MATTHEWS INCORPORATED
William Frank Carroll
*Attorney-in-charge*
Southern ID:  2167
State Bar No. 03892500
Thomas B. Alleman
Southern ID:  10784
State Bar No. 01017485
Aubrey B. Colvard
Southern ID: 1268559
State Bar No. 24076324

1201 Elm, Suite 3300
Dallas, Texas 75270
(214) 698-7800
(214) 698-7899 (Fax)
Email: fcarroll@coxsmith.com
            talleman@coxsmith.com
            acolvard@coxsmith.com

ATTORNEYS FOR DEFENDANT
Hometown Bank, N.A.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 14, 2013 the foregoing Reply of Hometown Bank, N.A. to Response Motion to Certify Class and Defendant's Motions to Dismiss was electronically submitted to the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case file system of the court. The electronic case file system sent a "Notice of Electronic Filing" to all counsel of record:

Emil Lippe, Jr.
LIPPE & ASSOCIATES
600 N. Pearl Street, Suite S2460
South Tower
Plaza of the Americas
Dallas, Texas 75201

Ronald Bruce Carlson
CARLSON LYNCH LTD.
231 Melville Ln.
P.O. Box 367
Sewickley, PA 15143

M. Andrew Zee
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530


/s/ William Frank Carroll
Attorney for Defendant